UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KARAN COLLINS LARLEE, *
*
Plaintiff, *
*
v. *
* Civ. No. 08-CV-12113-JLT
MICHAEL J. ASTRUE, *
Commissioner *
of Social Security, *
*
Defendant, *
*

MEMORANDUM

March 15, 2010

TAURO, J.

**I. Introduction**

This case arises under 42 U.S.C. § 405(g), as a review of a denial of disability benefits by the Social Security Administration. Presently at issue are Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner [#13] and Defendant's Motion for an Order Affirming the Decision of the Commissioner [#15].

The Commissioner of the Social Security Administration ("Commissioner") issued a final decision on October 17, 2008, which granted Plaintiff Karan Larlee ("Larlee") Disability Insurance Benefits for the period from April 1, 1997, until December 31, 1999, but denied her Benefits after December 31, 1999. Larlee argues that the Administrative Law Judge ("ALJ") failed to present substantial evidence to support his finding that Larlee's testimony was not

entirely credible and that her impairments ceased to be disabling after December 31, 1999.[1] Larlee asks this court to reverse the judgment insofar as it denies her benefits after December 31, 1999 and to remand with instructions to pay.[2] For the following reasons, Plaintiff's Motion to Reverse the Decision of the Commissioner [#13] is ALLOWED and Defendant's Motion to Affirm the Decision of the Commissioner [#15] is DENIED.

## II. Background

### A. Procedural History

Larlee filed an application for Social Security Disability Insurance ("SSDI") on December 24, 1998 claiming status as a disabled individual beginning on April 1, 1997.[3] The Commissioner initially denied her application on April 23, 1999,[4] and denied her request for reconsideration on August 4, 1999.[5] A hearing was held in Boston, Massachusetts before ALJ Lynette Diehl Lang on March 16, 2000. On June 16, 2000, the ALJ issued an opinion denying Larlee SSDI benefits.[6] The Appeals Council affirmed the ALJ's decision on January 7, 2002.[7]

Larlee filed a civil action in the United States District Court, pursuant to 42 U.S.C. § 405(g), seeking review of the final decision. But the Social Security Administration ("SSA") was

---

[1] Mem. of Law in Supp. of Pl.'s Mot. to Rev. the Dec. of the Comm'r of Soc. Sec. 3 (Pl.'s Mem.).

[2] Id. at 12.

[3] Tr. 68-82.

[4] Tr. 53-56

[5] Tr. 58-61.

[6] Tr. 10-25.

[7] Tr. 6-7.

unable to locate the Administrative Record and instead consented to remand the case for a new hearing before the Commissioner.[8] Before the hearing occurred, the SSA located Larlee's Administrative Record and reaffirmed the ALJ's decision on the basis of the original record.

Larlee again filed a civil complaint in the United States District Court, which again remanded the application for benefits for rehearing on August 19, 2003.[9] On August 6, 2004, ALJ James Packer conducted the hearing on remand and issued a decision partially favorable to Larlee on July 22, 2004.[10] Specifically, the decision granted ("Larlee") Benefits for the period from April 1, 1997, until December 31, 1999, but denied her Benefits after December 31, 1999. On October 17, 2008, the Appeals Council again denied Plaintiff's request for review, rendering ALJ Packer's July 2004 decision the final decision of the Commissioner.[11] Larlee filed her complaint seeking review of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g), on December 19, 2008.

B. Facts

Karan Larlee was born on June 25, 1970. She currently resides in Canton, Massachusetts with her husband and two children, who were born in December 1999 and January 2002. She is a college graduate and, until the alleged onset of her impairment on April 1, 1997, she was employed as a sales manager.[12] Since April 1, 1997, Larlee has not engaged in substantial gainful

---

[8] Tr. 298-301.

[9] Tr. 313.

[10] Tr. 262-275.

[11] Tr. 253.

[12] Pl.'s Mem. at 5.

activity.[13]

C. Medical Evidence

Larlee first complained about pain to Dr. Peter Himmel on May 16, 1995.[14] On March 7, 1996, Dr. Himmel wrote a letter stating that Larlee has been diagnosed with "chronic fatigue syndrome with associated fibromyalgia."[15] After further treatment on March 27, 1997, Dr. Himmel recommended that Larlee take two months to "totally rest" to avoid exacerbation of her chronic fatigue syndrome ("CFS").[16] At a later date, Dr. Himmel filled out a form stating that Larlee was "presently incapacitated" and had been since approximately March 27, 1997.[17]

Between 1997 and December 1999, Larlee saw three other doctors who concluded that she was disabled or would be unable to return to her former job. On September 16, 1997, Dr. William Fishbaugh opined that she was "totally disabled from her regular job of any modified work at this time."[18] Dr. H.S. Sandhi submitted a report on July 6, 1999 stating that Larlee would be unable to keep pace in a work setting and that she was unable to keep up with household chores and activities of daily living.[19] Dr. Geraldine Zabick submitted a report November 23, 1999 that similarly stated that Larlee would be unable to do any significant activity due to

---

[13]Tr. 274.

[14]Tr. 110.

[15]Tr. 160.

[16]Tr. 122.

[17]Tr. 107.

[18]Tr. 164.

[19]Tr. 196-197.

profound fatigue which would limit her ability to do any meaningful work.[20]

After 1999, Larlee was primarily seen by Dr. Don Goldenberg. Dr. Goldenberg first examined her on March 22, 1999. At that time, he concluded that Larlee suffered from CFS and fibromyalgia.[21] On May 3, 2000, Dr. Goldenberg found that during the last months of her pregnancy with her first child in the fall of 1999, her symptoms had "improved dramatically" but had subsequently returned.[22] He recommended that she maintain an exercise program. On April 4, 2002, upon examining Larlee after the birth of her second child, Dr. Goldenberg found that she continued to suffer from fibromyalgia but suggested that she try to exercise.[23] In a letter to Dr. Zabick dated January 10, 2003, Dr. Goldenberg stated that, after examining Larlee, he found her to have "a lot more difficulty with both joint and muscle pain," and stated that "she continues to have extreme difficulty doing any form of physical activity."[24]

Dr. Lorraine Gomba evaluated Larlee on June 5, 2000, following a referral from Dr. Goldenberg.[25] Dr. Gomba detailed that Larlee had felt "quite good" during her pregnancy but that her "symptoms ha[d] increased somewhat" over the past five months.[26] A physical examination yielded basically normal results, but Larlee tested positive for

---

[20]Tr. 229.

[21]Tr. 168.

[22]Tr. 354.

[23]Tr. 351.

[24]Tr. 348.

[25]Tr. 337-339.

[26]Tr. 337.

the tender trigger points associated with fibromyalgia.[27]

At the hearing held before ALJ Packer, Larlee testified that her hands, feet, neck, head, jaw, shoulders, lower back, and hip hurt constantly and that her ankles, knees, and elbows hurt intermittently.[28] Larlee further testified that pain medication and massage therapy helped relieve her symptoms to some extent, but that she still had to lay down as much as possible during the day and did not sleep well because of the pain.[29] Additionally, Larlee stated that she takes care of her two sons, but that she can only do it with significant assistance from daycare and friends who frequently babysit for the boys.[30]

## III. Discussion

### A. Standard of Review

When a district court reviews a final decision of the Commissioner, it has the "power to enter, on the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner..., with or without remanding the cause for a hearing,"[31] but it may not disturb the Commissioner's findings where they are supported by "substantial evidence."[32] If supported by substantial evidence, the ALJ's findings of fact are conclusive, "even

---

[27]Tr. 338-339.

[28]Tr. 369.

[29]Tr. 368, 373-374.

[30]Tr. 375.

[31] 42 U.S.C. § 405(g).

[32]Id.

if the record could arguably support a different result."[33] Substantial evidence, however, is "more than a scintilla of evidence that a reasonable person could find to support the result."[34] It exists only "when a reasonable mind, reviewing evidence in the record as a whole, could accept it as adequate to support the Commissioner's conclusion."[35] Even in the presence of substantial evidence, however, the Court may review conclusions of law[36] and invalidate findings of fact that are "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts".[37]

"In dealing with a determination or judgment which an administrative agency alone is authorized to make, [a reviewing court] must judge the propriety of such actions solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action."[38] "If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand."[39] Neither the Commissioner nor the reviewing judge may provide post hoc rationale to support an ALJ's

---

[33] Rodriguez v. Secretary of Health and Human Services, 819 F.2d 1, 3 (1st Cir. 1987).

[34] Id.

[35] Musto v. Halter, 135 F.Supp.2d 220, 225 (D. Mass. 2001).

[36] Slessinger v. Sec'y of Health & Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) (citing Thompson v. Harris, 504 F.Supp. 653, 654 (D. Mass. 1980)).

[37] Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

[38] Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 169, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962) quoting SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

[39] Barbarto v. Comm'r of Social Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) quoting Williams v. Bowen, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987).

decision.[40]

B. Analysis

The SSA defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[41] A person qualifies as disabled if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work."[42]

To determine whether a person qualifies as disabled, the SSA has created a five step sequential evaluation process.[43] The ALJ must determine (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether any jobs exist in the national economy

---

[40] See Sparks v. Bowen, 807 F.2d 616 (7th Cir. 1986); Johnson v. Secretary of Health and Human Servs., 794 F.2d 1106 (6th Cir. 1986); Lewin v. Schweiker, 654 F.2d 631, 634-635 (9th Cir. 1990); Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985); Owens v. Heckler, 769 F.2d 1511, 1516 n.6 (11th Cir. 1984).

[41] 42 U.S.C. § 423(d)(1)(A).

[42] 42 U.S.C. § 423(d)(2)(A).

[43] 20 C.F.R. § 404.1520; see Goodermote v. Sec'y of Health and Human Servs., 609 F.2d 5 (1st Cir. 1982).

that the claimant can perform given claimant's residual functional capacity ("RFC"), age, education, and work experience.[44]

In each of the first four steps, the claimant bears the burden of showing that she is disabled. Once she establishes that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in substantial gainful activity.[45]

After evaluating each step, the ALJ properly concluded that Larlee was totally disabled during the period of time between April 1, 1997 and December 31, 1999.[46] However, the ALJ erred in determining that after December 31, 1999, Larlee's impairment ceased to be disabling because she could perform sedentary jobs that exist in significant numbers in the economy.

I. Credibility Determination

Larlee primarily argues that this court should reverse the ALJ's denial of Benefits because the ALJ's failed to support his determination that her subjective complaints of pain were not entirely credible with specific findings that amount to substantial evidence.

Symptoms, such as pain or anxiety, sometimes suggest an impairment more severe than can be shown by objective medical evidence alone. Accordingly, once a claimant succeeds in demonstrating that she has a severe impairment that reasonably could be expected to produce her pain or other symptoms, the ALJ must evaluate the credibility of the claimant's subjective complaints of disabling limitations based on consideration of the entire record, in order to

---

[44]20 C.F.R. § 404.1520(a)(4)(i-v).

[45]Rohrberg v. Apfel, 26 F.Supp. 2d 303, 306-307 (D. Mass. 1998).

[46]Tr. 271.

determine how the claimant's symptoms affect her capacity to work.[47]

If the ALJ determines that the subjective complaints are greater than expected based on the objective medical evidence, then he must consider other relevant factors which may substantiate them, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the pain or other symptoms; (5) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (6) any other factors relating to claimant's functional limitations and restrictions due to pain (collectively referred to as "Avery factors").[48]

If, after weighing the above considerations, the ALJ determines that a claimant's subjective complaints of pain lack credibility, the ALJ "must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant."[49] The ALJ "cannot base such findings on groundless assertions; they must have the support of substantial evidence."[50] Furthermore, "it is not sufficient for the adjudicator to make a single, conclusory statement that the 'individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"[51]

---

[47]See 20 C.F.R. § 404.1529(c); Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986).

[48]Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 28 (1st Cir. 1986).

[49]DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986).

[50]Rohrberg, 26 F.Supp.2d at 309 (D. Mass. 1998).

[51]Social Security Ruling 96-7p.

In deciding that Larlee's impairment ceased to be disabling on December 31, 1999, the ALJ merely sets forth an unsupported conclusion that "the claimant's testimony regarding her inability to perform any work activity due to her impairment is not entirely credible to the extent alleged in view of the medical evidence and clinical findings in this case as well as the claimant's own testimony."[52] After summarizing Larlee's testimony at the outset of the decision, the ALJ mentions her testimony only four more times. On two occasions, he fails to provide more than a conclusory statement that the testimony was considered.[53] On the other occasions, he merely notes that Larlee stated her condition continually got worse until 1999.[54] Nowhere, however, does the ALJ provide even a general discussion, much less specific findings, as to the evidence he considered in deciding to disbelieve this testimony.[55]

The ALJ only made mention of one of the six Avery factors, the claimant's daily activities, and he does so in a decidedly cursory manner. He states only that "the claimant indicated that her activities of daily living have been greatly reduced because of her condition."[56] Despite specific details in the record, he provides no further discussion of any aspect of her day-to-day activities.

[52]Tr. 275 ¶ 12.

[53]Tr. 270 ("The [ALJ] after reviewing the medical evidence in this case as well as the testimony of the claimant..."); Tr. 272 ("[B]ased upon the medical evidence and testimony of the claimant...").

[54] Tr. 271 ("The [ALJ] notes the fact that the claimant has testified at the hearing that her condition was considerably worse from her alleged onset date of April 1, 1997 until the middle of 1999.); Tr. 271 ("[ALJ] notes that the claimant's testimony at the hearing that her condition was considerably worse until the middle of 1999 when it improved.").

[55]Pilet v. Apfel, 20 F. Supp. 2d 240, 246 (D. Mass. 1998).

[56]Tr. 266.

More importantly, however, he makes no specific findings which would indicate to this court how those activities might demonstrate that her subjective complaints were not credible.[57]

The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reason for that weight."[58] And this court is not at liberty to "save [a] decision by inserting the basis for a finding where there was not substantial evidence to support it and no specific finding justifying it as a rational result."[59] The ALJ's failure to bolster his credibility determination with specific findings is cause enough for this court to remand this action for rehearing at the very least.[60]

II. Reversal As Opposed to Remand

Pursuant to 42 U.S.C. § 405(g), "the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Larlee requests that the court reverse with instructions to award benefits rather than remand this issue for further administrative proceedings. Such a decision is not without precedent. And in light of the lengthy procedural history and untoward delays in adjudicating this case, this court finds

---

[57]Tr. 380.

[58]Social Security Ruling 96-7p.

[59]Id. at 310.

[60]See Barbarto, 923 F. Supp. at 1276 n.2 (internal quotation omitted).

reversal to be the appropriate judgment here.

In Seavey v. Barnhart, the First Circuit Court of Appeals acknowledges that other circuits "have exercised what we view as a form of equitable power to order benefits in cases where the entitlement is not totally clear, but the delay involved in repeated remands has become unconscionable."[61] Larlee initially filed for benefits over eleven years ago. She has endured two administrative hearings, two petitions to the Appeals Council, and two appeals to the District Court. Moreover, the SSA lost her administrative record prior to the first District Court appeal and the Appeals Council took four years to render a decision as to the second review.

In this court's view, the substantial delays that pervade this case's procedural history rise to the level of unconscionability envisioned by the First Circuit in Seavey. To remand for a third hearing would only further prolong "what has proven a painfully slow process."[62] "Administrative deference does not entitle the Commissioner to endless opportunities to get it right."[63] Accordingly, this court reverses the administrative decision, to the extent that it finds that Larlee was no longer disabled after December 31, 1999, with instructions to award benefits.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse the Decision of the Commissioner [#13]is ALLOWED. Defendant's Motion to Affirm the Decision of the Commissioner [#15]is

---

[61]Seavey v. Barnhart, 276 F.3d 1, 13 (1st Cir. 2001) citing Morales v. Apfel, 225 F.3d 310, 320 (3rd Cir. 2000) (Awarding benefits in a case where the claimant's appeals had continued for ten years); see also Rohrberg, 26 F.Supp.2d at 312 (Benefits awarded when initial application was filed five years prior to District Court appeal).

[62]Rohrberg, 26 F.Supp. 2d at 312 (D. Mass. 1998) (Internal quotations and citations omitted).

[63]Seavey, 276 F.3d at 13.

DENIED. The Commissioner's decision is REVERSED and REMANDED for calculation and award of benefits.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge